**DiSABATO & CONSIDINE LLC**
David J. DiSabato, Esq.
Lisa R. Considine, Esq.
196 Santiago Avenue,
Rutherford, New Jersey 07070
Phone: 201.762.5088
*ddisabato@disabatolaw.com*
*lconsidine@disabatolaw.com*

Attorneys for Plaintiff Edward Gable,
On behalf of himself and the putative class

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EDWARD GABLE, on behalf of himself and all others similarly situated individuals, | : | |
| Plaintiffs, | : | |
| | : | Civil Action |
| vs. | : | |
| | : | |
| HOMETOWN AMERICA, LLC, a Delaware Limited liability company; HOMETOWN AMERICA MANAGEMENT, LLC, A Delaware limited liability company, CWS COMMUNITIES, LP a Delaware limited partnership and ABC CORPS., | : | **FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |
| | : | Case No.: 1:20-cv-12071-NLH-AMD |
| Defendants. | : | |

Plaintiff EDWARD GABLE, of Sicklerville, New Jersey, on behalf of himself and the putative classes, by and through his undersigned attorneys, by way of First Amended Complaint, states and alleges matters pertaining to himself and his own acts, upon personal knowledge, and as to all other matters, upon information and belief, based upon the investigation undertaken by his counsel, as follows:

## NATURE OF THE CASE

1.     Defendant Hometown America, LLC ("Hometown") owns and manages a manufactured housing community known as Shenandoah Village in Sicklerville, New Jersey.

2.     Plaintiff Edward Gable is a citizen of the State of New Jersey and has been a resident of Shenandoah Village since 2010, and brings this action on behalf of himself and the other approximately seven-hundred (700) residents to Shenandoah Village.  All residents of Shenandoah Village rent parcels of land from Hometown within the Shenandoah community, on which parcels each resident's manufactured home sits.  The community is governed by Hometown's "Guidelines for Living" and is subject to, among other things, the Township of Gloucester's Manufactured Home Park Rent Stabilization ordinance, Ord. §68A-1 to -20.

3.     Beginning in mid-March 2020, with the onset of the COVID-19 pandemic, the residents of Shenandoah were largely quarantined and isolated in the community and found themselves at the mercy of Hometown, as Hometown unlawfully threatened evictions, unreasonably raised rents while withholding or eliminating virtually all amenities and services paid for by the residents.  At the same time, Hometown abandoned many of its responsibilities as owner of the community; failing entirely to enforce, for example, the age restrictions and pet restrictions guaranteed to the residents, and failing to maintain the infrastructure of the community.

4.     Hometown's actions constitute violations of public policy, municipal ordinance (Gloucester Township Municipal Code, §68A-4(B), Executive Order 106 (in conjunction with A-3859, establishing moratorium on tenant evictions), the Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, and the Truth in Consumer Contract, Notice and Warranty Act, N.J.S.A. 56:12-14, *et seq.*

5.     Plaintiffs seek declaratory and injunctive relief compelling Hometown to restore and provide all amenities and services that that have been withheld or eliminated, declaring May

2020 rent increases to be invalid and void, declaring all threats and notices of eviction served by Hometown in advance of the May 2020 rent increase to be invalid and void. Plaintiffs also seek monetary damages in an amount equal to the value of the services and amenities of which they were deprived and the per-resident incremental value of the 2.5% rent increase implemented in May 2020, as well as statutory damages pursuant to N.J.S.A. 56:12-17 and treble damages pursuant to N.J.S.A. 56:8-19.

6.    In addition, Plaintiff seeks to certify a second class of similarly situated residents of all manufactured housing communities own or operated by Defendants in New Jersey. Plaintiff's claims for this separate class stem from misleading and impermissible language in the form of residential lease generally used by Defendants across all of their New Jersey communities. As more fully alleged herein, those leases contain a provision that violates the the Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, and the Truth in Consumer Contract, Notice and Warranty Act, N.J.S.A. 56:12-14, *et seq.* Plaintiff seeks actual damages, as well as statutory damages pursuant to N.J.S.A. 56:12-17 (for each successive violation) and treble damages pursuant to N.J.S.A. 56:8-19.

## THE PARTIES

7.    Plaintiff Ed Gable is citizen of the State of New Jersey and is an individual permanently residing at 27 Hazeltop Drive, Sicklerville, New Jersey 08081, within the private residential leasehold community known as Shenandoah Village. Mr. Gable is the President of the New Manufactured Homeowners Association of Shenandoah Village. Mr. Gable is a Senior Citizen and is a U.S. Military Veteran, having served for 8 ½ years, and has been a resident of Shenandoah Village since 2010.

3

8.      Defendant Hometown America, LLC is a privately held Delaware limited liability company that directly or indirectly owns, manages and sets policy at over 24,000 home sites located in 67 manufactured housing communities in twelve States across the Country.  Defendant Hometown America does business under the alternate names "Hometown Homes" and "Hometown America Management LLC."  Defendant Hometown America's main business address is 150 North Wacker Drive, Suite 2800, Chicago, Illinois 60606.

9.      The principal members of Defendant Hometown America are individuals Patrick C. Zilis and Stephen H. Braun, who are both citizens of the State of Illinois and who both have a principal business address of 150 North Wacker Drive, Suite 2800, Chicago, Illinois 60606. Because Mr. Zilis and Mr. Braun are citizens of the State of Illinois, Defendant Hometown America is a citizen of the State of Illinois.

10.     Defendant CWS Communities LP ("CWS") is a Delaware limited partnership, and is the entity that directly owns the land upon which Shenandoah Village is situated.  CWS purchased the land 1997 from an unrelated California general partnership for approximately $8.1 Million.  CWS is the entity listed as "landlord" on Hometown's applications to the Gloucester Township Housing Authority.  Defendant CWS does business under the alternate name "Shenandoah Village."  CWS lists its principal place of business as 150 North Wacker Drive, Suite 2800, Chicago, Illinois 60606.

11.     The two General Partners of CWS Communities LP are CP Limited Partnership and Chateau Communities, Inc., which were acquired by Hometown America in a merger dated May 29, 2003. CP Limited Partnership is a Maryland Limited Partnership, the partners of which are Chateau Communities, Inc. and ROC Communities, Inc. Chateau Communities, Inc. is incorporated in and under the laws of the State of Maryland and lists it principal place of business

4

at 6160 South Syracuse Way, Greenwood Village, Colorado 80111. ROC Communities, Inc. is incorporated in and under the laws of the State of Maryland and lists its principal place of business at 6430 South Quebec Street, Englewood, Colorado 80111.

12.     Defendant Hometown America Management, LLC ("Hometown Management"), is also a Delaware limited liability company, and is an affiliate of Hometown that represents itself to be the managing agent or beneficial owner of Shenandoah Village. Hometown Management is the entity with which community residents enter into land leases for home sites at Shenandoah Village. Defendant Hometown American Management, LLC does business under the alternate names "Hometown Homes" and "Hometown America." Hometown lists a principal business address for service on its New Jersey agent at 820 Bear Tavern Road, West Trenton, New Jersey 08628 and a main business address at 150 North Wacker Drive, Suite 2800, Chicago, Illinois 60606.

13.     The principal members of Defendant Hometown America Management, L.L.C. are individuals Stephen H. Braun, Thomas Curatolo and Patrick C. Zilis, who are all citizens of the State of Illinois, and all of whom have a principal business address of 150 North Wacker Drive, Suite 2800, Chicago, Illinois 60606. Because Mr. Braun, Mr. Curatolo and Mr. Zilis are all citizens of the State of Illinois, Defendant Hometown America Management, LLC is a citizen of the State of Illinois.

**JURISDICTION AND VENUE**

14.     This action is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

15.     This Court has subject matter jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 2201, and pursuant to 28 U.S.C. § 1332(a)(1) in that the amount in controversy exceeds the sum or value of $75,000 and the parties are citizens of different states.

16. This Court has jurisdiction over Hometown because it maintains corporate places of business in this District; does substantial business in this District; and has registered with the State of New Jersey to conduct business in this District. Hometown owns and operates eight communities in New Jersey.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) & (2), as acts and/or omissions giving rise to Plaintiffs' claims occurred in this District; Defendants maintain and oversee agents or representatives in this District; and Defendants have conducted business activities on an ongoing basis in this District at all times material hereto.

## FACTUAL ALLEGATIONS

18. Hometown owns and manages eight communities in New Jersey, which are located in Barnegat, Egg Harbor, Mays Landing (which has two communities), Millville, Vineland, Spotswood and Sicklerville. With the exception of the community located in Vineland, each of the Hometown locations in New Jersey is age-restricted to 55 and over.

19. Hometown's business model is largely based on the paradoxical classification, in New Jersey and other states, of manufactured homes as chattel, rather than property. So while families living in manufactured housing communities are residential tenants insofar as they pay rent to occupied land owned by another, these tenancies differ from residential tenancies because the owners of the community generally do not lease any structures to their tenants, but rather only lease the land under each tenant's home.

20. Because the residents own their homes, but rent the home sites (the land on which the homes sit) from the community owner, the residents are in a particularly vulnerable position. They are subject to eviction under a traditional landlord-tenant scheme, without the protections that are afforded to homeowners in a foreclosure process. Thus, if evicted, a resident's home –

which contrary to traditional belief, is not truly mobile at all – is considered abandoned personal property and is padlocked and seized by the landlord.

21.     Hometown has used its leverage in this respect to take advantage of the residents of Shenandoah Village – many of whom are elderly and survive on fixed incomes – by increasing rents unreasonably and periodically threatening evictions.

## I.    UNLAWFUL THREATS OF EVICTION

22.     In mid-March 2020, New Jersey had just begun to implement financial, medical and political measures to cope with the COVID-19 pandemic that was overrunning the State.

23.     In order to protect vulnerable homeowners and renters across the State, on March 19, 2020 the New Jersey State Legislature signed A-3859 into law and, in conjunction with Governor Murphy's Executive Order 106, established a moratorium on tenant evictions and foreclosures.   That moratorium continues to be effect as of the filing of this Class Action Complaint.

24.     Executive Order 106 was crafted to explicitly provide protection to manufactured housing communities such as Shenandoah Village, defining "residential property" as "any property rented or owned for residential purposes, including, but not limited to, any house, building, mobile home or land in a mobile home park, or tenement leased for residential purposes, but shall not include any hotel, motel, or other guest house, or part thereof, rented to a transient guest or seasonal tenant, or a residential health care facility." March 19, 2020 Executive Order 106.

25.     Executive Order 106 recognized the grave the economic impacts of COVID-19 as posing "a growing threat to the housing security of many New Jerseyans" and acknowledged that "many New Jerseyans are or will be experiencing substantial loss of income as a result of business

closures, reductions in hours, or layoffs related to COVID-19, impeding their ability to keep current on rent and mortgage payments." *Id.*

26.    Governor Murphy further recognized that "housing security and stability are important to public health, particularly as homelessness can increase vulnerability to COVID-19 . . . [and] removals of residents pursuant to evictions or foreclosure proceedings can increase the risk to those residents of contracting COVID-19, which in turn increases the risks to the rest of society and endangers public health." *Id.*

27.    Guided by these important public safety policies, Governor Murphy instituted a moratorium on foreclosures and evictions by ordering and directing that "[a]ny lessee, tenant, homeowner or any other person shall not be removed from a residential property as the result of an eviction or foreclosure proceeding." *Id.*

28.    Despite the clearly established policy and terms of A-3859 and Executive Order 106, in March 2020, Hometown began its annual community-wide eviction process by serving a "Notice to Quit" on Mr. Gable and on each resident of Shenandoah Village.

29.    The Notice to Quit purports to terminate leases and to require the recipient to "quit, move out from the property by April 30, 2020." It further states that, if the recipient does not accept a proposed rent increase, he or she "must quit and vacate the property as of the date of termination listed above. This means you must move out and deliver possession to your landlord."

30.    Mr. Gable, like all other recipients of the Notice to Quit, understood the forgoing provision to mean precisely what it said – that effective April 30, 2020, he was evicted from his home.

## II.    IMPROPER RENT INCREASE

31.    In January 2020, Hometown America submitted its form Rent Increase Application to the Gloucester Township Housing Authority, seeking a blanket rent increase of 2.5% to be made effective on May 1, 2020.

32.    Hometown's January 2020 Section 68A-8 application was deficient and violative of Mr. Gable's and the Shenandoah Village residents' due process rights under Chapter 68A of the Gloucester Township Municipal Code.  First, the January 28, 2020 Rent Increase Application did not comply with Section 68A-8(A)(3) in that it lacked the required sworn statement of compliance with maintenance and security standards listed in Section 68A-4.  Second, the January 28, 2020 Rent Increase Application did not comply with Section 68A-7(C) in that it was never subject to public hearing or examination by all interested parties.

33.    Gloucester Township Municipal Code Chapter 68A vests tenants with the statutory right to contest and comment on any and all proposed rental increases through public hearing or examination by all interested parties. Mr. Gable and the residents of Shenandoah Village were denied this right.

34.    Despite being provided with written notice of the deficiencies of the Chapter 68A application and process by letter dated May 22, 2020, Hometown refused to correct the issues.

## III.    UNCOMPENSATED DEPRIVATION OF AMENITIES AND SERVICES

35.    Gloucester Township Municipal Code §68A-4(B) mandates that rent shall be reduced to account for deficiencies in, or cessation of, "services, maintenance, furniture, furnishings, recreational facilities or landscaping which existed at the signing of the lease" regardless of whether such defects or deficiencies are caused by factors outside of the control of the landlord.

36.    Since March 2020, Hometown has prohibited use of all outdoor activities and amenities at Shenandoah Village.  This includes use of the exercise room, pool table, ping pong table, indoor shuffleboard table, library, card room, activity room, community room and kitchen, putting green, outdoor shuffleboard area, BBQ and picnic area and the outdoor pool.

37.    Despite request to Hometown, Mr. Gable and all residents of Shenandoah Village have been prevented from using and enjoying any of the foregoing services and amenities, even though Hometown could have instituted protective measures to account for COVID-19, including limiting the number of residents permitted to use certain areas, or moving certain amenities outside.

38.    Even as restrictions were loosened by Governor Murphy for the State of New Jersey, in late June 2020 Hometown refused to accommodate a request to use the Shenandoah Village clubhouse for an indoor meeting that was proposed consistent with the then-allowable restrictions on indoor gatherings, pursuant to Executive Order 152.

39.    The cost of these services and amenities is included in the monthly rent paid by the residents of Shenandoah Village.  The monthly value these services and amenities is $100.

40.    Under Gloucester Township Municipal Code §68A-4(B), the residents are entitled to a rent reduction in that amount retroactively effective to March 2020 and continuing until such time as all services and amenities are restored and accessible.

**IV.    ABANDONMENT OF ENFORCEMENT OF AGE-RESTRICTION**

41.    Shenandoah Village community standards are governed by the Shenandoah Village Guidelines for Living, which was prepared and distributed to all residents by Hometown.

42.     Section 2.0 of the Guidelines for Living memorialize the age-restriction covenant, stating that "[t]here is a minimum age requirement of 55 years of age for at least one of the residents in each home . . . all other persons must be at least 19 years of age or older."

43.     This policy was recently re-confirmed in writing by letter from Hometown to a Shenandoah resident dated June 15, 2020.

44.     Hometown has stopped enforcing the age-restriction covenant at Shenandoah Village.   For example, at 62 Hazeltop Drive the home is occupied by two young adults (approximately 30-35 yrs. old) with no one over 55 living in the home; at 54 Skyline Drive there is no-one over 55 living in the home; at 83 Skyline Drive there is no-one over 55 living in the home; at 35 Loft Mountain Drive there is no-one over 55 living in the home; and at 44 Shenandoah Drive there is one child under 19 years old.

45.     These violations of the Guidelines for Living have been brought to the attention of Hometown on several occasions, most recently by letter dated June 29, 2020.  The July 8, 2020 letter response from Hometown falsely denied that any homes were in violation of the age-restriction policy and did not indicate whether Hometown would take any enforcement action in response to residents' complaints.

### CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action on behalf of himself and all other persons similarly situated, pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following classes:

> **CLASS ONE:**  All natural persons who are residents of Shenandoah Village and who received a Notice to Quit in March 2020 that is substantially the same in form and content to that attached to this Complaint as Exhibit A.

> **CLASS TWO:** All natural persons who are residents of a community owned or operated by Defendants in New Jersey, whose residency commenced prior to January 17, 2014 and whose lease was terminated and replaced at any time after January 17, 2014 via a Notice to Quit that is substantially the same in form and content to that attached to this Complaint as Exhibit A, and whose original lease contained a provision providing that the landlord shall be entitled to attorneys' fees and costs in any action under the lease.
>
> Excluded from both Classes are: (a) Defendants, any entity in which Defendants have a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors; (b) the judge to whom this case is assigned and any member of the judge's immediate family; and (c) individuals with claims for personal injury, wrongful death and/or emotional distress.

47.   **Numerosity**: The members of the Class are so numerous joinder of them all is impracticable.  Shenandoah Village contains 359 distinct homes.  Each home is occupied by one or more residents.  Currently, there are approximately 700 individual residents of Shenandoah Village.  Across all eight of Defendants' New Jersey communities, there are approximately 1,500 residences.  The identity of each resident can be readily ascertained from Defendants' records, including Defendants' rent-rolls and resident mailing list.  Class Members can be notified of this class action via publication and U.S. mail, e-mail, social media forums, posting in community gathering places and at addresses which Defendants have in their business records or records in their possession, custody or control.

48.   **Commonality and Predominance**: There are common questions of law and fact that predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, include, but are not limited to, the following:

(a) Did the eviction provisions of the Notice to Quit violate a clearly established right of the residents of Shenandoah Village?

(b)  Did Defendants' threat of eviction during Government-ordered eviction moratorium constitute an unconscionable business practice?

(c) Was Hometown required to reimburse residents for the value of amenities and services after withdrawing same during the pandemic?

(d)  Do residents' leases created after January 17, 2014 via Defendants' annual Notice to Quit violate the Consumer Fraud Act by providing for attorneys' fees to be allowable to the landlord, but not to the tenant?

(e)  Do residents' leases created after January 17, 2014 via Defendants' annual Notice to Quit violate TCCWNA by providing for attorneys' fees to be allowable to the landlord, but not to the tenant?

49.    **Typicality**: The claims of the individual named Plaintiff are typical of the claims of the Classes in that Plaintiff alleges a common course of conduct by Defendants toward members of the Classes.  Defendants sent or caused to be sent a Notice to Quit that contained provisions that are contrary to State law and public policy.  The same Notice was sent to Plaintiff and all residents of Shenandoah Village and gives rise to uniformly typical claims for the class.  In addition, the lease of Plaintiff and all other members of the Classes is a form lease and was used for all residents who are members of Class Two.  Those leases all contain the same provision that is contrary to State law.  Plaintiff and the other members of the Classes seek identical remedies under identical legal theories, and Plaintiff's claims do not conflict with the interests of any other members of the Class in that the Plaintiff and the other members of the Class were subject to the same conduct and suffered the same harm.

50.    **Adequacy**:  Mr. Gable will fairly and adequately represent the interests of the Classes.  Plaintiff's claims are coextensive with, and not antagonistic to, the claims of the other

members of the Classes.  Plaintiff is committed to the vigorous prosecution of the Classes' claims

and has retained attorneys who are highly qualified to pursue this litigation and have experience

in class actions, including consumer protection actions.

51.    **Superiority**: Certification under Rule 23(b)(3) will also be appropriate because a

class action is superior to other available methods for the fair and efficient adjudication of this

controversy given the relatively small amount of fees imposed on consumers, the complexity of

the issues involved in this litigation, the enormity of Defendants' business, and the significant costs

of litigation, and absent a class action, it is very likely prosecution of the claims set forth herein

would not occur.   Furthermore, since joinder of all members is impracticable, a class action will

allow for an orderly and expeditious administration of the claims of the Classes and will foster

economies of time, effort and expense.

52.    **Rule 23(b)(2):** As an alternative to or in addition to certification of the Classes

under Rule 23(b)(3), class certification will be warranted under Rule 23(b)(2) because Plaintiff

seeks injunctive relief on behalf of the members of the Classes on grounds generally applicable to

the entire Class in order to enjoin and prevent Defendants' ongoing practice of wrongfully

threatening evictions, and to order Defendants to provide notice that their March 2020 Notice to

Quit was void and that residents may have a  potential right to reimbursement of a portion of rent

from Defendants, and to order Defendants to provide notice to Class Two that their leases do not

comply with the law and do not accurately state the parties' rights and responsibilities relating to

the availability of attorneys' fees in actions arising under the leases.

53.    Because Plaintiff seeks injunctive relief for Class Members, the prosecution of

separate actions by individual Class Members would create a risk of inconsistent or varying

adjudications with respect to individual Class Members which would establish incompatible

standards of conduct for Defendants. Further, adjudications with respect to individual Class Members would, as a practical matter, be dispositive of the interests of other Class Members who are not parties to the adjudication and may impair and impede their ability to protect their interests.

54. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

55. Plaintiff does not anticipate any difficulty in the management of this litigation.

## COUNT ONE
## NEW JERSEY CONSUMER FRAUD ACT, N.J.S.A. 56:8-1, *ET SEQ.*
## (AS TO CLASS ONE)

56. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

57. Plaintiff is a "person" and a "consumer" pursuant to N.J.S.A. § 56:8-1(d), as he and all members of the class are natural persons as defined therein. Plaintiff is also a "senior citizen"[1] as defined by N.J.S.A. § 56:8-1(f).

58. Defendants are "persons" pursuant to N.J.S.A. § 56:8-1(d), as they are business entities, corporations or companies as defined therein.

59. Defendants engage in the sale of merchandise pursuant to N.J.S.A. § 56:8-1(e), in that they rent land to consumers and sell services and amenities to consumers.

60. Defendants have engaged in deceptive, unconscionable, unfair, fraudulent and/or misleading commercial practices in the course of renting land and selling services and amenities and in the subsequent performance associated with such leases in violation the N.J.S.A § 56:8-2.

---

[1] Under the New Jersey Consumer Fraud Act, in addition to all other remedies available, a defendant who directs a scheme, plan or course of conduct at "senior citizens" or persons with disabilities shall be subject to a penalty of up to $30,000 per violation, enforceable by the Office of the Attorney General, should the Office of the Attorney General choose to pursue an action. N.J.S.A. § 56:8-14.3.

61.     Specifically, Defendants' threatening of eviction during an eviction moratorium and charging for services that are not provided constitute unfair and unconscionable commercial practices.

62.     In the case of Plaintiff, as set forth above, Defendants' act on or around March 2020 of threatening eviction via an illegal Notice to Quit, and then charging Plaintiff $100 per month for services and amenities that were not provided constitute unfair and unconscionable commercial practices.

63.     Defendants willfully threatened eviction despite having actual knowledge that a State policy and Executive Order voided the threat, and willfully continuing to withhold services and amenities while continuing to profit from residents' payments for same, compound and perpetuate the unconscionablity of their practice.

64.     Moreover, despite demand, Defendants have refused, and continue to refuse, to refund the portion of rents collected for services and amenities never provided, thus further compounding and perpetuating the unconscionablity of their practice.

65.     Defendants' unfair and unconscionable acts and practices occurred repeatedly in their trade or business and were capable of deceiving most, if not all of the residents of Shenandoah Village, many of whom – like Plaintiff Ed Gable – are senior citizens, as defined by the CFA.

66.     As a direct and proximate result of Defendants' violations of the CFA as set forth in the preceding paragraphs, Plaintiff suffered a concrete and ascertainable loss in the amount of $100.00.

67.     But for Defendants' unconscionable act of wrongfully threatening eviction and charging Plaintiff for services that Defendants knew would not be provided, Plaintiff would not

have suffered any damage.  Said another way, Plaintiff's damages are the direct and proximate result of Defendants' violation of the CFA, in that his loss flowed directly from Defendants' acts.

## COUNT TWO
### BREACH OF CONTRACT
### (AS TO CLASS ONE)

68.    Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

69.    Since March 2020, Hometown has prohibited use of all outdoor activities and amenities at Shenandoah Village.  This includes use of the exercise room, pool table, ping pong table, indoor shuffleboard table, library, card room, activity room, community room and kitchen, putting green, outdoor shuffleboard area, BBQ and picnic area and the outdoor pool.

70.    The foregoing services and amenities are contractually provided to Plaintiff and the residents of Shenandoah Village by virtue of their individual leases and the Guidelines for Living executed by each resident.

71.    Moreover, Gloucester Township Municipal Code §68A-4(B) mandates that rent shall be reduced to account for deficiencies in, or cessation of, "services, maintenance, furniture, furnishings, recreational facilities or landscaping which existed at the signing of the lease" regardless of whether such defects or deficiencies are caused by factors outside of the control of the landlord.

72.    Despite request to Hometown, Mr. Gable and all residents of Shenandoah Village have been prevented from using and enjoying any of the foregoing services and amenities, even though Hometown could have instituted protective measures to account for COVID-19, including limiting the number of residents permitted to use certain areas, or moving certain amenities outside.

73.    Hometown's failure to provide these services and amenities, despite collecting money from Plaintiff and all residents of Shenandoah Village, constitutes a breach of contract.

74.    Plaintiff and he residents of Shenandoah Village performed all of their obligations under the contracts, including paying their full rents during this period of time.  The monthly value of these services and amenities is $100 per person.

## COUNT THREE
## UNJUST ENRICHMENT
### (AS TO CLASS ONE)

75.    Plaintiff repeats and realleges all paragraphs above as if fully set forth at length herein.

76.    This Count is plead in the alternative to Plaintiff's claim for breach of contract as alleged in Count Two.

77.    As a result of the unlawful and unconscionable practices of Defendants as described herein, the Defendants have obtained and retained significant monies to which they have no lawful claim, and have accordingly been unjustly enriched.

78.    Specifically, Defendants obtained monies by charging Plaintiff and the residents of Shenandoah Village for services that were never provided.  Those monies represent an unearned benefit to the Defendants.  Defendants retained monies without providing anything in return to Plaintiff and the class.  Accordingly, Defendants have been unjustly enriched.

79.    In Plaintiff's case, Defendants were unjustly enriched in the amount of $100.00 per month during the period of time that services and amenities were withheld by Defendants.

80.    Defendants' collection and retention of money for withheld services and amenities violates the fundamental principles of justice, equity and good conscience and unjustly enriches Defendants.

81.    Plaintiff seeks disgorgement of all unjustly retained profits which were obtained through Defendants' unfair, unlawful, misleading and deceptive means described above.

**COUNT FOUR**
**TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT,**
**N.J.S.A. 56:12-14 to -18**
**(AS TO CLASS ONE)**

82.    Plaintiff repeats and realleges all paragraphs above as if fully set forth at length herein.

83.    N.J.S.A. 56:12-15 states that "[n]o seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warrant, notice or sign . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law . . . ."

84.    Mr. Gable and the residents of Shenandoah Village are "consumers" within the meaning of TCCWNA.

85.    Defendants are "sellers" and "lessors" within the meaning of TCCWNA.

86.    The Notice to Quit sent by Defendants in March 2020 is a "consumer notice" within the meaning of TCCWNA.

87.    Defendants gave or displayed written consumer notices to Plaintiff and others in March 2020, which included a provision or provisions that violated Plaintiff's clearly established right established by State law, as well as Defendants' clearly established legal responsibilities.

88.    Specifically, Defendants gave and displayed the Notice to Quit to Plaintiff that included a provision threatening that an eviction would take place on April 30, 2020, despite the

fact that State law as established through Executive Order 106 prevented any such eviction from taking place.

89.     Plaintiff and all others similarly situated are "aggrieved consumers" within the meaning of TCCWNA (at N.J.S.A. § 56:12-17) because they suffered a harm, including economic and non-economic damages, as a result of Defendants' violation of TCCWNA.

90.     Specifically, Plaintiff and all others were deprived of their ability to reject or challenge the unlawful 2.5% rent increase that was forced upon them via the Notice to Quit, which improperly threatened eviction, even though eviction had been outlawed by the State law.  As a consequence of this violation, Mr. Gable incurred monetary damages in an amount equal to the 2.5% increase in his rent instituted on May 1, 2020 and incurred each month thereafter, as did each Class Member.

91.     Alternatively, Mr. Gable and all Class Members are aggrieved consumers in that the misleading and violative language of the Notice to Quit deterred them from rejecting, challenging or otherwise avoiding the 2.5% rent increase.  Specifically, had they not been deterred by Defendants' inclusion of a provision that unlawfully threatened that mass evictions would take place on April 30, 2020, they would have rejected, challenged or otherwise avoided the rent increase.

**COUNT FIVE**
**NEW JERSEY CONSUMER FRAUD ACT, N.J.S.A. 56:8-1, *ET SEQ.***
**(AS TO CLASS TWO)**

92.     Plaintiff repeats and realleges all prior allegations as if set froth at length herein.

93.     Plaintiff is a "person" and a "consumer" pursuant to N.J.S.A. § 56:8-1(d), as he and all members of the Class Two are natural persons as defined therein.

94.    Defendants are "persons" pursuant to N.J.S.A. § 56:8-1(d), as they are business entities, corporations or companies as defined therein.

95.    Defendants engage in the sale of merchandise pursuant to N.J.S.A. § 56:8-1(e), in that they rent land to consumers and sell services and amenities to consumers.

96.    Defendants have engaged in deceptive, unconscionable, unfair, fraudulent and/or misleading commercial practices in the course of renting land in violation the N.J.S.A § 56:8-2.

97.    Specifically, the form leases entered into by Defendants with the members of Class Two falsely advise tenants that, with respect to any action arising under the lease, the landlord (but not the tenant) shall be entitled to attorneys' fees and costs if successful in the action.

98.    For example, Mr. Gable's lease contains the following provision:

> 14.    ATTORNEYS FEES AND COURT COSTS.    If SHENANDOAH VILLAGE is the prevailing party in any action under this Agreement it shall be entitled to reasonable attorney fees and costs.  If SHENANDOAH VILLAGE files a nonpayment of rent action or for cause eviction in court, the filing fee, service fees and reasonable attorney fees and all costs as provided by law will be added to the rental arrearage and must be paid together with all other amounts die as "additional rent", even if these amounts are paid prior to the entry of judgment.  If SHENANDOAH VILLAGE hires an attorney to enforce any terms of this lease or Guidelines for Living or the law, the tenant will pay all reasonable attorney fees and all costs as additional rent.

99.    However, effective January 17, 2014, New Jersey law (N.J.S.A. § 2A:18-61.67) required that all residential leases contain language advising tenants that, if the lease allows for a landlord to recover its fees (as Mr. Gable's does), the lease shall also explicitly provide for a reciprocal right for the tenant to recover his or her fees.

100.    The leases of Mr. Gable and all members of Class Two contain the foregoing language, which is deceptive, false and misleading, in that it does not advise tenants of their right to recover fees, which it must do pursuant to N.J.S.A. § 2A:18-61.67.

101.    Beginning on May 1, 2014 and repeating on each year since then, the leases of Mr. Gable and all the members of Class Two were terminated and replaced by new leases, none of which comply with N.J.S.A. § 2A:18-61.67.

102.    Despite ample opportunity to do so, Defendants have never advised Mr. Gable or the members of Class Two of their statutory right to recover attorneys' fees and costs if successful in an action under the lease.

103.    Defendants' failure to abide by the law by including a deceptive, false, misleading and unlawful provision in these residential leases is an unconscionable commercial practice under the Consumer Fraud Act, particularly because it deliberately distorts tenants' legal process rights and massively tilts the landlord-tenant playing field in favor Defendants and against the residents.

104.    In addition, Defendants' failure to abide by the law by including the above deceptive, false, misleading and unlawful provision in these residential leases is a *per se* violation of the Consumer Fraud Act pursuant to N.J.S.A. § 2A:18-61.65.

105.    As a direct and proximate result of Defendants' violations of the CFA as set forth in the preceding paragraphs, Plaintiff suffered a concrete and ascertainable loss in the amount of $500, which is the amount Plaintiff paid for critical safety maintenance work at his property that Defendants refused to provide, and for which Plaintiff could not seek remedy through a legal action because of Defendant's unconscionable violation of N.J.S.A. § 2A:18-61.67.

106.    But for Defendants' unconscionable act of including the above deceptive, false, misleading and unlawful provision in these residential leases, Plaintiff would not have suffered any damage.  Said another way, Plaintiff's damages are the direct and proximate result of Defendants' violation of the CFA, in that his loss flowed directly from Defendants' acts.

**COUNT SIX**
**TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT,**
**N.J.S.A. 56:12-14 to -18**
**(AS TO CLASS TWO)**

107.    Plaintiff repeats and realleges all prior allegations as if set froth at length herein.

108.    Mr. Gable and the members of Class Two are "consumers" within the meaning of TCCWNA.

109.    Defendants are "sellers" and "lessors" within the meaning of TCCWNA.

110.    The Notice to Quit sent by Defendants to members of Class Two in March of each year are "consumer notices" within the meaning of TCCWNA.

111.    The leases governing the tenancy of each of the members of Class Two are "consumer contracts" within the meaning of TCCWNA.

112.    The leases governing the tenancy of each of the members of Class Two are "offered" or "entered into" by Defendants and said class member-residents, as those phrases are used in TCCWNA.

113.    The leases of Mr. Gable and all members of Class Two contain the following provision, or a provision substantially the same as the following provision:

> 14.    ATTORNEYS FEES AND COURT COSTS.    If SHENANDOAH VILLAGE is the prevailing party in any action under this Agreement it shall be entitled to reasonable attorney fees and costs.  If SHENANDOAH VILLAGE files a nonpayment of rent action or for cause eviction in court, the filing fee, service fees and reasonable attorney fees and all costs as provided by law will be added to the rental arrearage and must be paid together with all other amounts die as "additional rent", even if these amounts are paid prior to the entry of judgment.  If SHENANDOAH VILLAGE hires an attorney to enforce any terms of this lease or Guidelines for Living or the law, the tenant will pay all reasonable attorney fees and all costs as additional rent.

114.    Effective January 17, 2014, New Jersey law (N.J.S.A. § 2A:18-61.67) required that all residential leases contain language advising tenants that, if the lease allows for a landlord to recover its fees, the lease shall also explicitly provide for a reciprocal right for the tenant to recover his or her fees.

115.    The leases of Mr. Gable and all members of Class Two contain the foregoing provision, which does not advise tenants of their right to recover fees, which it must do pursuant to N.J.S.A. § 2A:18-61.67.

116.    It is Defendants' policy and practice is to raise rent for all residents on May 1st of every year, in each of its eight communities in New Jersey.

117.    Defendants' policy and practice is to send each resident a standard form Notice to Quit in or around March of each year, which terminates the then existing lease, and offers a new lease with increased rent that will become effective on May 1st.

> 2.  Purpose of Notice:  Your Landlord wants to increase your lot rent.  In order to do this, your landlord must terminate (end) your lease and offer you a new lease at an increase in rent.
>
> 3.  Termination of Lease.  Your Present Lease is terminated as of 4/30/xx . . .
>
> 4.  ACCEPTANCE.  If you remain in possession of this property after the termination date, it will mean that you accept and agree to this rent increase and this new lease terms.

118.    Per Defendants' Notice to Quit, each resident that accepts his or her new lease begins a new tenancy with increased rent effective May 1st.

119.    The form leases used by Hometown America in New Jersey prior to 2014 contain a provision that does provide for fees to be recovered by the landlord, but *does not* provide a reciprocal right allowing the tenant to seek fees from the landlord.

120.    Upon information and belief, Defendants began including the required language in leases *for newly arriving residents only* in 2014.

121.    However, residents whose leases were terminated via Defendants' form Notice to Quit in 2014 (and each year since then), did *not* receive a new lease that complied with N.J.S.A. § 2A:18-61.67, nor did they receive any writing whatsoever that provided notified them of their rights under N.J.S.A. § 2A:18-61.67.

122.    For example, Mr. Gable and his wife originally entered into a standard form lease with Defendants on August 1, 2010.  The lease governing that tenancy includes a provision that falsely states that fees may only be recovered by the landlord.  Beginning with Mr. Gable's new lease in May of 2014 (and each year since then), the attorney fee provision was never made compliant with N.J.S.A. § 2A:18-61.67, in that it repeatedly unlawfully advised that only the landlord – not the tenant – had a right to recover attorney fees.

123.    Although Mr. Gable entered into new leases with Defendants in 2014, 2015, 2016, 2017, 2018, 2019 and 2020, he never received a lease with an attorney fee provision that was compliant with N.J.S.A. § 2A:18-61.67.

124.    The same is true for each of each of residents of each of the eight New Jersey communities owned or managed by Hometown America whose original lease predates January 2014, and who entered into new leases annually with Defendants in 2014 and each year thereafter.

125.    The foregoing violates TCCWNA for each new lease created via a Notice to Quit in each year beginning in 2014, because Defendants entered into consumer contracts (each new lease) with Plaintiffs that include a provision violating a clearly established right established by State law (N.J.S.A. § 2A:18-61.67), and which also violates a clearly established legal responsibility on behalf of Defendants.

126.    Plaintiff and all others members of Class Two are "aggrieved consumers" within the meaning of TCCWNA (at N.J.S.A. § 56:12-17) because they suffered a harm, including economic and non-economic damages, as a result of Defendants' violation of TCCWNA.

127.    Specifically, Plaintiff suffered a concrete monetary loss in the amount of $500, which is the amount Plaintiff paid for critical safety maintenance work at his property that Defendants refused to provide, and for which Plaintiff could not seek remedy through a legal action because of Defendant's violation of TCCWNA by including an attorney fee provision in Plaintiff's lease that violated N.J.S.A. § 2A:18-61.67.

128.    Alternatively, Plaintiff and all other members of Class Two were deprived of their ability to challenge, and were deterred from challenging, lease provisions, lease enforcement, rent increases and all other challenges arising from their leases, because their leases falsely advised them *that only the landlord* would be entitled to recoup fees in court.  As a consequence of this, Plaintiff, for example, was deterred from seeking legal redress for the $500 he incurred implementing safety measures at his property, the cost of which Defendants were responsible.

## COUNT SIX
### (Injunctive Relief)

129.    Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

130.    The leases and guidelines governing Shenandoah Village and the CFA create contractual or statutory duties which Defendants owe to Plaintiff and the Class Members, and they create legal rights inuring to Plaintiffs and the Class Members.

131.    The CFA imposes on Defendants a duty not to engage in deceptive, unconscionable commercial practices.  As set forth above, Defendants have violated that duty, injured Plaintiffs

and the other members of the Class thereby, and violated one or more of their cognizable legal rights.

132.    Defendants continue to threaten eviction during an eviction moratorium and continue to charge for services they are not providing and continue to charge and collect rents and fees for services they refuse to provide to Plaintiff and to the other members of the Class. Moreover, Defendants continue to retain the ill-gotten monies that they have wrongfully obtained from Plaintiff and to the other members of the Class.

133.    Defendants' acts and conduct have caused Plaintiff and the other members of the Class to be aggrieved, and unless enjoined by the Court, Defendants will continue to cause harm and damages to Plaintiff, other members of the Class, and future Shenandoah Village residents.

134.    Plaintiff and the other members of the Class do not have a fully adequate remedy at law by virtue of Defendants' ongoing course of conduct.

135.    Irreparable injury will be suffered unless an injunction issues to prevent Defendants from continuing their improper actions, including wrongfully threatening evictions.

136.    Any potential injury to Defendants attributable to an injunction is outweighed by the injury that Plaintiff and the other members of the Class and the public will suffer if such injunction is not issued, and such injunction would not be adverse to the public interest.

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, demands judgment against the Defendants, as follows:

(A)    Certifying Class One and Class Two, as defined herein, pursuant to Fed. Civ. P. Rule 23(b)(2) and (3), and naming Plaintiff as class representatives and his undersigned counsel of record as Class Counsel;

(B)    On behalf of the Class One, ordering injunctive relief prohibiting Defendants from future violations of the CFA and TCCWNA and enjoining Defendants to provide all services required pursuant to existing leases;

(C)    On behalf of Class One, ordering disgorgement and restitution to Plaintiff and the Class Members of all monies received or collected from Plaintiff and the Class Members for rent increases and rent charges attributable to services and amenities that were not provided;

(D)    On behalf of Class One and Class Two, awarding actual, consequential, punitive, statutory, and treble damages, jointly and severally, as to Defendants;

(E)    On behalf of Class One and Class Two, awarding all damages allowed by common law, statute, and otherwise;

(F)    On behalf of Class One and Class Two, awarding reasonable costs and attorneys' fees;

(G)    On behalf of Class One and Class Two, awarding applicable pre-judgment and post-judgment interest;

(H)    On behalf of Class One and Class Two, awarding all such other and further relief as Plaintiff and the Class may be entitled or as the Court deems equitable and just.

**NOTICE TO ATTORNEY GENERAL OF ACTION**

A copy of this Complaint will be mailed to the Attorney General of the State of New Jersey within 10 days after the filing with the Court, pursuant to N.J.S.A. § 56:8-20.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**CERTIFICATION PURSUANT TO RULE 11.2**

Pursuant to Rule 11.2, I hereby certify, to the best of my knowledge, that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated.


Dated: September 25, 2020

/s/ David J. DiSabato

David J. DiSabato, Esq.
**DiSABATO & CONSIDINE LLC**
196 Santiago Avenue
Rutherford, New Jersey 07070
Phone: 201.762.5088
Fax: 973.453.0338
*ddisabato@disabatolaw.com*

*Attorneys for Plaintiff Edward Gable*
*On behalf of himself and the putative classes*

# EXHIBIT "A"

2020 Rent

### Notice to Quit



HOMETOWN AMERICA
C O M M U N I T I E S

This letter contains language required by law. Your continued residency is hereby solicited.

1. **Present Lease:**   You currently rent ███████████

2. **Purpose of Notice:**   Your Landlord wants to increase your rent.     In order to do this, your landlord must terminate (end) your lease and guidelines for living and offer you a new lease at an increase in rent.

3. **Termination of Lease:**   Your Present lease is terminated as of April 30, 2020.   If you wish remain in the community, you may; provided you sign a new lease and pay the new rent stated below.   If you do not wish to stay, you must quit and vacate the property as of the date of termination listed above.   This means you must move out and deliver possession to your landlord.

4. **Rent:**   The following table outlines your increase and total rent due for a one year lease term. Your lot rent in the amount of ███████████████████████ effective May 1, 2020, as permitted under 68A-8 of the Manufactured Home Park Rent Stabilization Ordinance of Gloucester Township.

    Monthly Base Rent
    Monthly Sewer                                ████████████████

          Total Rent Due as of May 1, 2020              $█████
    This increase is approved by the Gloucester Township Housing Authority Rent Stabilization.

5. **Other Changes in The Lease:**   *N/A*

6. **Acceptance:**   Should you choose to remain in possession of this rental property after the termination date, it will mean that you accept and agree to this rent increase and the terms of your new lease and guidelines for living.   You are required to sign your new lease or quit, move out from the property by April 30, 2020.

This Notice to Quit does not waive any of the landlord's rights to proceed on any rent that is currently due or prior notices to cease or quit.

**The Tenant has a right at any time during the term of the tenancy to petition the board for a reduction of rent for defects or deficiencies that have not been corrected or otherwise remain unabated.**

Sincerely,

*Winnie Howells*

Winnie Howells
Community Manager
█████████████████████

| Resident Signature | Date |
| --- | --- |
| Resident Signature | Date |

### Shenandoah Village