**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| EDWARD GABLE, on behalf of himself and all others similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>HOMETOWN AMERICA, LLC, CWS COMMUNITIES, LP, HOMETOWN and AMERICA MANAGEMENT, LLC,<br><br>Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 20-12071 (KMW-EAP)<br><br>**OPINION** |

APPEARANCES:

David J. Disabato, Esquire
Disabato & Considine LLC
196 Santiago Avenue
Rutherford, NJ 07070
      Counsel for Plaintiff Edward Gable, on behalf of himself and all others similarly situated
      individuals

Kerri E. Chewning, Esquire
Archer & Greiner, PC
1025 Laurel Oak Road
Voorhees, NJ 08043
      Counsel for Defendants Hometown America, LLC, CWS Communities, LP, Hometown
      and America Management, LLC

**WILLIAMS, District Judge:**

**I.      INTRODUCTION**

      Before the Court is Defendants', Hometown America, LLC, CWS Communities, LP,

Hometown and America Management, LLC ("Hometown")[1], second Motion to Dismiss,

---

[1] The Court will refer to all Hometown Defendants, collectively and individually, as "Defendants" or "Hometown."

pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, seeking to dismiss Gable's Third

Amended Complaint ("TAC") in its entirety.  Plaintiff, Edward Gable ("Plaintiff" or "Gable"),

opposes the Motion.  For the reasons set forth below, Hometown's Motion is granted in part and

denied in part.

## II.    BACKGROUND

### A.    PROCEDURAL HISTORY

Gable filed this lawsuit against Hometown pursuant to Federal Rule of Civil Procedure

23 and 28 U.S.C. § 1332(a)(1), alleging that the amount in controversy exceeds the $75,000 and

the parties are citizens of different states.  On September 10, 2020, Gable was ordered to show

cause why the case should not be dismissed due to lack of subject matter jurisdiction based on

the failure to properly plead the citizenship of the parties.  Order to Show Cause ("OTSC"), ECF

No. 3, Sept. 10, 2020.  The OTSC allowed Gable fifteen (15) days to file an amended complaint.

*Id.*  Gable filed an Amended Complaint [ECF No. 4] within the 15 days allotted.  On December

1, 2020, Hometown filed a Motion to Dismiss the Amended Complaint.  Thereafter, on June 30,

2021, Gable filed a Motion [ECF No. 18] seeking to amend the Amended Complaint.

After this case was reassigned to this Court, the Court held a hearing on the pending

Motions.  As a result, the Court dismissed the claims in the Amended Complaint, providing

Gable with leave to amend his pleading.  Order, ECF No. 30, Jan. 26, 2022.  Gable voluntarily

withdrew the Motion to Amend.  *Id.*  Gable filed the TAC [ECF No. 32] on February 25, 2022.

The TAC contains seven causes of action:  (1) Count One: New Jersey Consumer Fraud Act

("CFA") (Class One); (2) Count Two: Breach of Contract (Class One); (3) Count Three: Unjust

Enrichment (Class One); (4) Count Four: Truth in Consumer Contract, Warranty, and Notice Act

("TCCWNA") (Class One); (5) Count Five: CFA (Class Two); (6) Count Six: CFA (Class One);

Count Seven: TCCWNA (Class One).  On March 25, 2022, Hometown filed the pending Motion to Dismiss [ECF No. 33] seeking dismissal of the entire TAC; the MTD is ripe for disposition.

### B.   FACTUAL BACKGROUND

The Court derives the facts from the TAC and accepts same as true for purposes of this MTD.  Gable, a resident of the age-restricted, manufactured home community, Shenandoah Village (and president of the homeowner's association) since 2010, filed this lawsuit against Hometown on behalf of himself and all other similarly situated Shenandoah Village residents.[2] TAC ¶¶ 2, 8, 20.  The TAC avers unlawful conduct by Hometown relating to threats of eviction contained within a 2020 Notice to Quit, an unlawful rent increase, the failure to set forth a reciprocal attorney fee provision within the residential lease, and the failure to provide access to community services and amenities during New Jersey's stay-at-home orders in response to the coronavirus pandemic.  TAC ¶¶ 3-7.  Shenandoah Village is governed by Hometown's Guidelines for Living (incorporated by reference into the residential lease) and is subject to the Township of Gloucester's ("Township") Manufactured Home Park Rent Stabilization Ordinance, §§ 68A-1 to -20 ("Ordinance").  TAC ¶ 2.

*Unlawful Threat of Eviction*

---

[2] The TAC outlines two classes of Plaintiffs.

CLASS ONE: All natural persons who are residents of Shenandoah Village and who received a Notice to Quit in March 2020 that is substantially the same in form and content to that attached to this Complaint as Exhibit A.

CLASS TWO: All natural persons who are residents of a community owned or operated by Defendants in New Jersey, whose residency commenced prior to January 17, 2014 and whose lease was terminated and replaced at any time after January 17, 2014 via a Notice to Quit that is substantially the same in form and content to that attached to this Complaint as Exhibit A, and whose original lease contained a provision providing that the landlord shall be entitled to attorneys' fees and costs in any action under the lease.

TAC ¶ 71.

In mid-March 2020, New Jersey began implementing measures to cope with the COVID-19 pandemic.  *Id.* ¶ 24.  To this end, Governor Murphy issued Executive Order (EO) 106 which prohibited, in pertinent part, the removal of tenants from a residential property, including mobile homes, due to eviction or foreclosure.  *Id.* ¶¶ 24-25.  In March 2020, Hometown began its annual "community-wide eviction process" by sending Notices to Quit to the residents of Shenandoah Village.  *Id.* ¶¶ 24-32.  The Notice to Quit purported to terminate the lease, offered a new lease at a new rent rate and, if the recipient did not wish to accept the proposed rent increase, required the recipient to "quit, move out from the property by April 30, 2020." *Id.* ¶ 31.  The Notice to Quit provided: "[i]f you do not wish to stay, you must quit and vacate the property as of the date of termination listed above.  This means you must move out and deliver possession to your landlord." *Id.*  Gable and other recipients understood the Notice to Quit provisions to mean that they would be evicted from their homes as of April 30, 2020.  *Id.* ¶ 32. Defendants traditionally used the Notice to Quit mechanism to raise rents annually.  *Id.* ¶ 119.

*Improper Rent Increase*

In January 2020, Hometown America submitted its form Rent Increase Application ("Application") to the Gloucester Township Housing Authority ("Housing Authority"), seeking a blanket rent increase of 2.5 percent, effective on May 1, 2020.  *Id.* ¶ 33.  The Application lacked the required sworn statement of compliance with maintenance and security standards listed in Ordinance § 68A-4.  *Id.* ¶ 34.  The Application was never the subject of a public hearing or examination by all interested parties pursuant to the Ordinance § 68A-7(C).  *Id.*  Gable and the Shenandoah Village residents were not permitted to contest and comment on the proposed rental increase through public hearing or examination.  *Id.* ¶ 35.  Additionally, despite being provided

with written notice of the deficiencies of the Application and the process by a pre-suit letter dated May 22, 2020, Hometown refused to correct the issues.  *Id.* ¶ 36.

*Uncompensated Deprivation of Amenities and Services*

Since March 2020, Hometown prohibited the use of all community activities and amenities at Shenandoah Village, including use of the exercise room, pool table, ping pong table, indoor shuffleboard table, library, card room, activity room, community room and kitchen, putting green, outdoor shuffleboard area, BBQ and picnic area, and the outdoor pool.  *Id.* ¶ 38. The cost of these services and amenities is included in the Shenandoah Village residents' monthly rent, which was $608.33 through April 30, 2020, and $695.33 from May 1, 2020, through the end of 2020.  *Id.* ¶ 41.  Although Gable and other residents requested use of the services and amenities, Hometown continued to prevent use of the same even though protective measures could have been instituted.  *Id.* ¶ 39.  Even as Governor Murphy loosened restrictions, in late-June 2020, Hometown refused to accommodate a request to use the Shenandoah Village clubhouse for an indoor meeting consistent with the then-allowable restrictions on indoor gatherings pursuant to EO 152.  *Id.* ¶ 40.  The amenities offered at Shenandoah Village are important to Shenandoah Village residents because they are mostly senior citizen residents (living on fixed incomes) who rely on the amenities and common areas for exercise, safe social interaction, and entertainment.  *Id.* ¶¶ 42, 67.  Additionally, these amenities are of value to the residents of Shenandoah Village because the residents' homes are modest and compact, and do not provide much indoor or outdoor space for recreational activities.  *Id.*  Thus, the amenities have a tangible monetary value to the residents. Gable calculates the value of the services and amenities to constitute approximately 15 percent of his monthly rent, or $100.00 per month.

*Residential Lease Attorney Fee Provision*

Gable avers that the form residential lease entered into by Hometown and Shenandoah Village residents (members of Class Two) provides, regarding any action arising under the lease, the landlord (but not the tenant) shall be entitled to attorneys' fees and costs, if successful in an action under the residential lease. *Id.* ¶ 137. Gable's lease, which he and his wife originally entered into on August 1, 2010, contains the following provision:

> 14. ATTORNEYS FEES AND COURT COSTS. If SHENANDOAH VILLAGE is the prevailing party in any action under this Agreement it shall be entitled to reasonable attorney fees and costs. If SHENANDOAH VILLAGE files a nonpayment of rent action or for cause eviction in court, the filing fee, service fees and reasonable attorney fees and all costs as provided by law will be added to the rental arrearage and must be paid together with all other amounts due as "additional rent", even if these amounts are paid prior to the entry of judgment. If SHENANDOAH VILLAGE hires an attorney to enforce any terms of this lease or Guidelines for Living or the law, the tenant will pay all reasonable attorney fees and all costs as additional rent.

*Id*. ¶ 138, 145. Effective January 17, 2014, New Jersey law (N.J.S.A. § 2A:18-61.67) changed to require that all residential leases contain language advising tenants that, if the lease allows for a landlord to recover its fees (as Mr. Gable's does), the lease shall also explicitly provide for a reciprocal right for the tenant to recover his or her fees. *Id.* ¶ 139. Since May 1, 2014, and each year thereafter, Gable's lease (and all members of Class Two), was terminated and replaced by new leases, but the form lease used by Hometown prior to 2014 contains a provision allowing for the landlord to recover fees but does not provide a reciprocal right for the tenant. *Id.* ¶¶ 141-42. Hometown began including the required language in leases for newly arriving residents only in 2014. *Id.* ¶ 143. Residents whose leases were terminated via Hometown's form Notice to Quit in 2014 (and each year since then), did not receive a new lease that complied with N.J.S.A. § 2A:18-61.67, nor did they receive any writing whatsoever that notified them of their rights under N.J.S.A. § 2A:18-61.67. *Id.* ¶ 144. In 2014 and all years thereafter, Gable, who keeps meticulous records and has every Notice to Quit sent to him since moving into Shenandoah

Village, did not receive any documents or notices purporting to add an attorney fee provision to his lease. *Id.* ¶¶ 146-148.  The only notice that Gable received in 2014 was a March 3, 2014 Notice to Quit, which does not contain any language relating to attorneys' fees.  *Id.* ¶ 146.

In early 2020, Gable requested that Hometown remove a dead tree that was leaning over his home and that was within ten feet of his roof.  *Id.* ¶ 154.  The Guidelines for Living provide:

> Trees may not be removed without the written consent of Shenandoah Village. Once planted, Resident is responsible for ongoing maintenance of landscaping. However, after installation, all trees and large shrubs become Community property. Management will only be responsible for tree pruning if branches come within 10 feet above roof. In addition, management will remove dead limbs and dead trees.

*Id.* ¶ 153.  Hometown refused to take any action.  *Id.*  Gable considered bringing an action in small claims court to enforce his rights under the Guidelines for Living, but Gable was deterred from doing so by the one-sided attorney fee language in his residential lease.  *Id.* ¶ 155.  As a result, Plaintiff was forced to pay a private contractor $500 to remove the tree.  *Id.* ¶ 156.

*Exhaustion of Administrative Remedies*

Hometown, through correspondence dated January 22, 2021, sent a notice to Gable regarding a proposed rent increase which provided:

> Prior to the the [sic] Administrators [sic] decision [on the proposed rent increase], residents can by letter state any maintenance problems with your rental unit or common areas. All correspondence should be made to the Administrator no later than sixty five [sic] (65) days prior to the date of the operational year. Direct any correspondence or inquiries to:
>
> Gloucester Township Housing Authority Rent Stabilization
> 405 Woodbury Turnersville Road Suite 1
> Blackwood, NJ 08012
>
> A copy of all correspondence or inquires must also be provided to the landlord. The tenant has a right at any time during the term of the tenancy to petition the Gloucester Township Housing Authority, Rent Stabilization for a reduction of rent for defects or deficiencies that have not been corrected by the landlord.

*Id.* ¶ 46.  By letters dated February 19, 2021, Gable – both individually and through counsel – formally petitioned the Housing Authority (copying Hometown) to object to Hometown's proposed 2.5 percent rent increase, which would be effective on May 1, 2021.  *Id.* ¶¶ 45, 47.  The letters also requested a rent reduction of $100 to account for amenities that were withheld by Hometown and a hearing.  *Id.* ¶¶ 45, 48.  On April 22, 2021, still having heard nothing, Gable's counsel contacted the Township's counsel, David Carlamere ("Carlamere") to explain that Hometown's proposed 2.5 percent rent increase was scheduled to go into effect on May 1, 2021, and Gable was entitled to an administrative hearing on his challenge to the increase.  *Id.* ¶ 51.  Carlamere confirmed that the Housing Authority received Gable's petition and assured counsel that he would investigate the status of the matter and get back to counsel.  *Id.* ¶¶ 52-53.  The 2.5 percent rent increase went into effect on May 1, 2021, and Gable was not given a chance to be heard until a May 26, 2021 hearing.  *Id.* ¶¶ 54-56.  Gable's petition challenging the proposed rent increase was the first such petition ever seen by the Housing Authority, and as such, the Housing Authority had no official administrative process or policy for hearing the challenge.  *Id.* ¶¶ 56-57.

The Housing Authority, chaired by Mr. Carlamere's wife, Cynthia Carlamere, continued to meet throughout the pandemic (via Zoom) in 2020; it also met throughout 2021.  *Id.* ¶¶ 58-59, 69.  The 2021 Minutes of the Housing Authority reveal that Gable's petition was never raised, discussed, or considered by the Housing Authority at any time during 2021; the May 26, 2021 hearing did not result in a determination.  *Id.* ¶¶ 59-60.

On January 10, 2022, Gable received a notice from Hometown, proposing a rent increase to become effective on May 1, 2022.  *Id.* ¶ 61.  The Housing Authority allowed the 2021 increase

to be implemented without rendering a decision on Gable's petition and is now entertaining the 2022 proposed rent increase.  *Id.* ¶¶ 62-65.

## III.    LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, see *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id*. (quoting *Twombly*, 555 U.S. at 557).

A district court may consider allegations in the complaint; matters of public record, orders, and exhibits attached to the complaint are taken into consideration. *Francis E. Parker*

*Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 551 (D.N.J. 2013)(citing *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir.1990)). Thus, generally, a district court cannot consider matters that are extraneous to the pleadings. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, one exception is that courts may consider documents integral to or explicitly relied upon in the complaint without converting the motion to dismiss to one for summary judgment. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)(citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426). In this regard, it is critical to consider "whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

When considering a Rule 12(b)(1) motion challenging standing, a district court "must first ascertain whether it 'presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed.'" *Long v. Se. Pennsylvania Transportation Auth.*, 903 F.3d 312, 320 (3d Cir. 2018)(quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014)).   A facial attack considers a claim on its face, considering only the complaint, while viewing it in the light most favorable to the plaintiff.  *Id.*  Courts presented with a factual attack, contesting the truth of the jurisdictional allegations, "need not treat the allegations as true, and a plenary trial is held to resolve any material factual disputes."  *Id.*

## IV.     DISCUSSION

### A.     NJCFA (Counts One, Five, and Six)

The CFA prohibits:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the

> knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . .

N.J.S.A. § 56:8-2.  To state a claim under the CFA, a plaintiff shall allege: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss."  *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009); *see also Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007)("a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff.")(citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 647 A.2d 454, 462–465 (1994)).

Gable's TAC asserts several CFA claims premised on different theories of liability. Count One of Gable's TAC alleges two theories of liability arising under the CFA as it relates to Class One.  The first theory alleges that Hometown violated the CFA because Hometown's 2020 Notice to Quit threatening eviction constituted an unconscionable practice because of EO 106's prohibition on evictions; the second theory relates to Hometown's failure to reduce rent for services and amenities withheld from residents from March 2020 through the summer of 2020. Count Five alleges deceptive, unconscionable, and unfair practices relating to Hometown's failure to provide notice of a reciprocal right for tenants to recover attorney's fees within the residential lease as required by N.J.S.A. §2A:18-61.67.  Finally, Count Six avers CFA violations based on Hometown's use of a Notice Letter which, due to Hometown's alleged impersonation of the Township, led Gable not to challenge what he believed to be a rent increase proposed and approved by the Township.

### 1.     Notice to Quit (Count One)

Hometown argues that Gable fails to state a claim for violation of CFA because EO 106 was not effective at the time it sent the Notice to Quit; and EO 106 prohibited the removal of tenants and the Notice to Quit did not give Hometown the right to remove Plaintiff (nor did Hometown seek to do so).  Def.'s Br., ECF No. 33-1, 8-10.  Hometown argues that because New Jersey law requires a Notice to Quit to increase rent, Gable's claim would render unlawful all rent increases sought during the pandemic, thereby transforming EO 106 to a "rent increase" moratorium, not an "eviction" moratorium.  *Id.*  Gable argues that the TAC adequately alleges that Hometown's act of threatening eviction, even though evictions were made unlawful by EO 106, to coerce payment of higher rents was an unconscionable commercial practice in violation of the CFA.  Pl.'s Opp'n Br. 4-13.  Gable argues that the Notice to Quit violated the CFA by omitting the material fact that Hometown lacked the legal authority to evict Plaintiff, with the intention that Gable would rely on the omission.  *Id.*

Gable fails to state a plausible claim for relief under the CFA relating to the Notice to Quit as it was sent prior to the effective date of EO 106 and Gable does not sufficiently plead an act of omission by Hometown through its failure to advise residents of EO 106.  As an initial matter, Gable has not adequately pled that Hometown engaged in "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation" in the first instance since the Notice to Quit, sent on March 12, 2020, was sent one week before the March 19, 2020 effective date of EO 106.  TAC ¶ 25; Ex. A.  Hometown cannot be expected to comply with an Executive Order not yet effective.  Gable, not disputing that the Notice to Quit preceded the effective date of EO 106, claims that the date of the "threatened eviction" – April 30, 2020 – outlined in the Notice to Quit was well after EO 106 became effective and Hometown

could have informed residents that EO 106 shielded them from eviction.  *See* Pl.'s Opp'n Br. 9.

Essentially, Gable claims that Hometown concealed material information to maintain the false

threat of eviction.  *See id*.  However, under the CFA, to establish an act of omission, plaintiff

"must demonstrate that defendant (1) knowingly concealed (2) a material fact (3) with the

intention that plaintiff rely upon the concealment."  *Coba v. Ford Motor Co.*, 932 F.3d 114, 124

(3d Cir. 2019)(quoting *Judge v. Blackfin Yacht Corp.*, 357 N.J. Super. 418, 425 (App. Div.

2003)).  Gable's TAC fails to allege any facts relating to Hometown's knowing concealment of

EO 106 or its intent for Gable to rely upon same, thus, it fails to adequately plead a CFA claim.

The TAC similarly fails to state a CFA claim because the Notice to Quit did not threaten

eviction nor does EO 106 preclude threats of eviction.  EO 106 plainly states that "[a]ny lessee,

tenant, homeowner or any other person shall not be removed from a residential property **as the**

**result of an eviction or foreclosure proceeding**."  Eviction is a well-defined legal process

wherein landlords may seek removal of a tenant by the superior court based on the establishment

of good cause as outlined in  N.J.S.A. § 2A:18-61.1.  The TAC does not contain a single

allegation that Hometown Defendants were to avail themselves of this legal process.  Even if

Hometown did state such an intention, EO 106 explicitly allowed for the initiation and

continuation of "eviction and foreclosure proceedings."  To be clear, EO 106 did not restrict

Hometown's ability to threaten eviction or even its ability to initiate an eviction proceeding;

Hometown was only precluded from removal of residents **as a result of the eviction**

**proceeding**.  *See, e.g., Talmadge Vill. LLC v. Wilson*, 468 N.J. Super. 514, 260 A.3d 51 (App.

Div. 2021)(noting that defendant's removal from an apartment was not barred under Executive

Order 106 because the landlord sought ***defendant's removal by way of an ejectment, not an***

***eviction or foreclosure***).  The TAC fails to state a CFA claim relating to the Notice to Quit.

### 2.    Rent Reduction (Count One)

Count One also avers that Hometown violated the CFA because it continued to charge for services and amenities that residents were prohibited from using from March 2020 through the summer of 2020 without providing a commensurate rent reduction.  At issue here is a provision of the Ordinance providing an administrative process for tenants to seek a rent reduction.  It provides:

> Any individual tenant or class of tenants who are not receiving the same standards of service, maintenance, furniture, furnishings, recreational facilities or landscaping which existed at the signing of the lease may petition to the Administrator for a rent reduction in view of the deficiency. The tenant or class of tenants shall pay the reduced rent as determined by the Administrator as the full payment of rent until the landlord proves that the deficiency has been corrected.

Ordinance § 68A-4(B).

Hometown argues that Gable fails to state a claim for violation of the CFA because the Ordinance provides a process for tenants to petition for a rent reduction and Gable was required to exhaust this process before raising it in Court – Gable did not attempt to exhaust his administrative remedies until after he filed this lawsuit in 2021.  Def.'s Br. 11-13.  Hometown further contends that even if Gable attempted to exhaust his administrative remedies and the Township failed to properly act, Gable failed to properly challenge any action or inaction by complying with the rules governing actions in lieu of prerogative writ.  Def.'s Br. 13-14.  Finally, Hometown argues that Gable cannot challenge the alleged action or inaction of the Township through the filing of CFA claim when there exists a process to challenge a determination, or lack thereof, of the administrator.[3]  Def.'s Br. 14-15.

---

[3] Hometown contends that this argument similarly applies to Counts Two and Three of the TAC to the extent the Counts rely upon Ordinance § 68A-4(B).  *Id.* at 15.

Gable contends that he sought guidance and redress from the Township since March 2020, but the Township has been unable to meaningfully address his concerns due to the pandemic.  Pl.'s Opp'n Br. 13.  Gable also argues that Section 68A-4(B) of the Ordinance is permissive, not mandatory, and courts have long recognized that the exhaustion of remedies is not absolute.  Pl.'s Opp'n Br. 14.  Thus, given that Gable was unable to address his issues with the Township due the pandemic, he claims he had no available, effective, and adequate method to address his legal claims, other than to seek redress from this Court.  *Id.* at 14-15.  Gable next contends that not all of his CFA, contract, and unjust enrichment claims are not within the types of "rent reduction" claims that can be adjudicated by the Township.  *Id.* at 15.  Finally, Gable provides that his TAC alleges that he tried to avail himself of an administrative remedy regarding a 2021 Petition**,** but he never received a decision.  *Id.* at 15-16.  Thus, the process is futile, unavailable, and inadequate.  *Id.*  Gable asserts that Hometown's argument omits that the Township never issued a decision in suggesting that Gable was required to appeal the Township's inaction.  *Id.*

Gable fails to state a claim relating to the rent reduction based on his failure to exhaust his administrative remedies.  The New Jersey Supreme Court recognizes that all available and appropriate administrative remedies generally should be fully explored before judicial intervention is sought.  *Brunetti v. Borough of New Milford*, 68 N.J. 576, 588 (1975).  The exhaustion doctrine allows administrative bodies – and their corresponding expertise in the area – to perform their functions without preliminary interference from the courts, and it furthers the general policy of avoiding unnecessary adjudication.  *Paterson Redevelopment Agency v. Schulman*, 78 N.J. 378, 386-387 (1979).  Thus, there is a strong presumption favoring the requirement of exhaustion of remedies.  *Brunetti*, 68 N.J. at 588.  The exhaustion requirement is

not jurisdictional or absolute and will be waived where "'the interest of justice so requires.'" *Brunetti*, 68 N.J. at 589. "[E]xhaustion of remedies will not be required where administrative review will be futile, where there is a need for prompt decision in the public interest, where the issues do not involve administrative expertise or discretion and only a question of law is involved and where irreparable harm will otherwise result from denial of immediate judicial relief." *Id.*

The TAC fails to plead that Gable exhausted, or even attempted to exhaust, his administrative remedies in 2020 by following the Ordinance's dictates, directing the filing of a rent-reduction petition relating to the failure to receive services or recreational amenities. Despite the Ordinance squarely providing an administrative process to address a tenant's claim relating to the failure to provide services and amenities, the TAC fails to allege that Gable filed a petition in 2020. The TAC only contains allegations concerning a February 2021 letter requesting a rent reduction for services withheld from March 2020 through the summer of 2020. TAC ¶¶ 45, 102. Gable contends that the pandemic impeded his ability to obtain an administrative remedy, however, facts relating to this contention are not pled in the TAC.[4] Pl.'s Br. 13-14.

Unable to point to facts pled demonstrating that a petition concerning the lack of services and amenities was filed, Gable contends that the Ordinance is permissive, not mandatory, as courts have long held that exhaustion of administrative remedies is not absolute. As set forth above, however, the presumption in favor of exhausting remedies is strong. *Brunetti*, 68 N.J. at 588. Here, Gable bases the permissiveness of the exhaustion on the Township Administrator's inability to address his <u>issues</u>, not his <u>petition</u>, due to the pandemic and on the Housing

---

[4] Plaintiff's Opposition Brief also references a certification that is not appended to the TAC or his Opposition Brief.

Authority's failure to act on a 2021 petition.   In the interest of justice, the Court need not require exhaustion of remedies where administrative review would be futile. *Brunetti*, 68 N.J. at 589. However, here again, Gable fails to plead facts establishing any attempt to exhaust his remedies relating to Hometown's 2020 failure to provide services and amenities. *See* Compl. ¶ 47 (referencing only a 2021 Petition, filed in response to a 2021 notice, for rent reduction and deficiencies in amenities).   Thus, the Court has no basis upon which to find that the process relating to any petition filed concerning issues arising in 2020 would have been futile and, therefore, dismisses the CFA claim relating to the rent reduction for the failure to exhaust administrative remedies.[5]

### 3.      N.J.S.A. § 2A:18-61.67's Attorney Fee Provision (Count Five)

Count Five of the TAC alleges deceptive, unconscionable, and unfair practices relating to Hometown's failure to provide notice of a reciprocal right for tenants to recover attorney's fees within the residential lease as required by N.J.S.A. § 2A:18-61.67.

Plaintiffs must establish that they have standing to sue. *Adam v. Barone*, 41 F.4th 230, 233 (3d Cir. 2022).   "'A plaintiff has standing only if [s]he can 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.''" *Id.* at 233 (quoting *California v. Texas*, 141 S. Ct. 2104, 2113 (2021)).   If a plaintiff lacks standing, the court lacks authority under Article III to consider the merits of the claim. *Id.*   "Article III standing requires (1) an injury in fact, (2) a causal connection between the injury and the defendant's conduct, and (3) a likelihood that a favorable decision will provide redress for the injury." *Long*, 903 F.3d at 321.

---

[5] This ruling applies with equal force to Counts Two and Three of the TAC to the extent the rent reduction claims rely upon Ordinance § 68A-4(B).  It does not, however, address Gable's ability to claim a breach of the residential lease which allegedly provides for use of community facilities.

Hometown argues that Gable pleads a violation of a statute without a concrete injury. Def.'s Br. 17-18.  Taking as true that Hometown did not include the relevant attorney fee provision in the residential lease, Gable has yet to suffer an injury because he can still file a lawsuit relating to the alleged maintenance issue and recover attorney's fees, if successful.  *Id.* Thus, Gable has not lost any legal rights.  *Id.*  Hometown also argues that Gable fails to establish that it is likely, rather than speculative, that a favorable decision will provide redress for the alleged injury – $500 for maintenance work.  Def.'s Br. 18-19.  At this point, Gable has not established an entitlement to the $500 because he has yet to prove that Hometown even breached a contractual duty to remove the tree.  Def.'s Br. 17-19.  Gable contends that his loss is neither speculative or hypothetical – Hometown falsely advised him that only Hometown could recover legal fees in actions arising under the residential lease and this representation dissuaded him from filing suit against Hometown, forcing him to instead pay $500 for safety work at his property.  Pl.'s Br. 21-27.  Gable contends that he alleges a concrete, monetary harm.  *Id.*

Here, Gable lacks standing because he fails to establish a concrete injury that can be redressed by a favorable decision.  Establishing an injury in fact requires a "showing that plaintiff suffered an invasion of a legally protected interest, that the harm is concrete and particularized to her, and that she actually suffered or is imminently going to suffer that harm." *Adam*, 41 F.4th at 234.  Plaintiff must allege more than conjectural or hypothetical harm.  *Long*, 903 F.3d at 321.  Likewise, an injury is concrete if it is palpable, not abstract.  *Id.*  A concrete injury need not be tangible to be concrete, however, intangible harm, constitutes an injury in fact if it "'has a close relationship' to one that historically provided a basis for a lawsuit."  *Id.* Congress also "may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law . . . ."  *Id.*  at 321 (internal quotations omitted).

The facts pled establish that Hometown allegedly violated N.J.S.A. §2A:18-61.67 through its failure to include reciprocal fee-shifting language in its residential lease.  However, even assuming Hometown's unlawful conduct, a concrete injury remains lacking.  Despite the lack of notice within the residential lease and Gable's claim that he would have filed a lawsuit if he had notice, Gable was aware of his entitlement to legal fees upon the filing of this lawsuit and had, and still has, the ability to file suit against Hometown for a determination as to Hometown's liability regarding the safety work.[6]  Similarly, Gable does not allege that he filed suit and incurred legal fees due to Hometown's unlawful practice.  Instead, Gable's alleged harm is the $500 incurred for the safety work which is, at this juncture, for purposes of this CFA claim, conjectural and/or hypothetical because it presupposes a binding determination establishing an entitlement for same.  The facts alleged here are much different from CFA claims wherein plaintiffs allege a materialized monetary harm based on conduct running afoul of the CFA.  *See, e.g., Adam*, 41 F.4th 230 (plaintiff charged $100 for samples of beauty advertised as free).

Thus, contrary to Gable's contention, the Court finds *Long* instructive.  903 F.3d 312 (3d Cir. 2018).  In *Long*, the defendant failed to provide plaintiff with notice of plaintiff's rights under FCRA.  *Id.*  Plaintiff argued that defendant's failure to notify plaintiffs of their rights could lead to increased risk that individuals would not know of their FCRA rights, and their claims could lapse before they could bring suit.  *Id.* at 324.  The Third Circuit found that this circumstance represented a bare procedural violation, divorced from any concrete harm.  *Id.*  The Third Circuit explained that although plaintiffs did not receive notice of their rights, they understood their rights sufficiently to bring their lawsuit.  *Id.* at 325.

---

[6] New Jersey has a six-year statute of limitation for breach of contract claims.  *Todish v. CIGNA Corp.*, 206 F.3d 303, 305 (3d Cir. 2000).

N.J.S.A. §2A:18-61.67 instructs landlords to include reciprocal notice of the ability to obtain legal fees in residential leases to establish parity between tenants and landlords regardless of whether a provision concerning the award of attorney's fees or expenses, or both, is included in the lease.  2012 New Jersey Senate Bill No. 2018, New Jersey Two Hundred Fifteenth Legislature - Second Annual Session.  Here, like in *Long*, Hometown failed to provide notice of Gable's entitlement to fee-shifting upon successful resolution of a lawsuit arising from the residential lease.  Additionally, like *Long*, this lack of notice does not preclude Gable from bringing a legal action against Hometown and recouping attorney's fees, if successful.[7] Moreover, while Gable distinguishes *Long* on the basis that he sustained a real, monetary damage – $500 expended on safety work because he chose not to sue Hometown – Gable has not pled any facts demonstrating that the Court can provide redress for the out-of-pocket expenses because the alleged monetary figure is based on an unsupported legal conclusion that Gable is entitled to same.  Namely, there are no allegations referencing any determination that Hometown, based on the relevant provisions of the residential lease, was contractually responsible for the safety work.  Gable lacks standing and, as such, this CFA claim is dismissed.

---

[7] Gable's reliance on *Pisarz v. GC Servs. Ltd. P'ship*, No. 16-4552 (FLW), 2017 WL 1102636 (D.N.J. Mar. 24, 2017), is misplaced.  The court in *Pisarz* found that defendant's failure to provide statutorily required disclosures pursuant to the Fair Debt Collection Practices Act constituted real harm "that Congress has elevated to the status of a legally cognizable injury through the FDCPA."  *Id.* at *6.  Thus, unlike here, the decision on standing in *Pisarz* was based on the fact that plaintiff's injury was the lack of disclosure because it was the very harm Congress sought to protect against.

Similarly, Gable's reliance on *Kelly v. RealPage Inc.*, 47 F.4th 202, 213 (3d Cir. 2022) does not change the Court's analysis on this issue.  Gable cannot state a cognizable informational injury.  The Third Circuit in *Kelly* explained that to state a cognizable informational injury a plaintiff must allege that they failed to receive required information, and that the omission led to "adverse effects" or other "downstream consequences," and such consequences have a nexus to the interest Congress sought to protect.  *Id.* at 214.  Gable argues that the downstream consequences or adverse effects suffered is the change in his behavior resulting from Hometown's lack of disclosure – he decided not to sue Hometown regarding the safety work and incurred $500.  These consequences do not have the requisite nexus to the interest protected by the statute ensuring that tenants are provided notice of their right to reciprocal attorney's where here Gable discovered his rights, maintains the right to sue, and to recover attorney's fees, if he is successful.

### 4.    N.J.S.A. § 56:8-2.1 (Count Six)

In Count Six, Gable alleges that Hometown engaged in a *per se* violation of the CFA when it sent a notification regarding a rent increase which states and implies that the notification is from the Housing Authority.  Count Six alleges that Hometown sent Shenandoah Village residents a rent increase notification on what appears to be the letterhead of the "Gloucester Township Housing Authority – Rent Stabilization."  Compl. ¶ 169.  Due to the misleading nature of the letterhead and the lack of a reference to Hometown, Gable believed that the notification was from the Housing Authority, notifying him that the Township had proposed and approved a 2.5 percent rent increase.  Compl. ¶¶170-175, 183-185.  Thus, Gable was dissuaded from challenging the rent increase.  Compl. ¶¶ 183-184.  Gable avers that Hometown's notice was shown to the Township mayor who was shocked and stated that the notice was borderline "criminal misrepresentation" by Hometown.  *Id.* ¶ 176.  Similarly, a member of the Housing Authority shown the notice indicated that it appeared as if the notice came from the Housing Authority and that same is very confusing to seniors.  *Id.* ¶ 177.

N.J.S.A. § 56:8-2.1 provides:

> It shall be an unlawful practice for any person to operate under a name or in a manner which wrongfully implies that such person is a branch of or associated with any department or agency of the Federal Government or of this State or any of its political subdivisions, or use any seal, insignia, envelope or other format which simulates that of any governmental department or agency.

Hometown argues that Gable fails to state a claim because Hometown is required to provide tenants with notice of a rent increase pursuant to the Ordinance and Hometown's notice letter is an exact duplicate of the Township form letter included with the Township's Application for rent increases.  Def.'s Br. 26-27.  Thus, Hometown was not impersonating the Township.  *Id.* Hometown further argues that the Court should not credit Gable's conclusory beliefs that he

believed the notice letter was both a Township request and an approval of a rent increase and,
therefore, Gable did not challenge the rent increase.  *Id.*  Hometown points to examples within
the notice letter which it contends demonstrate a rent increase is being sought as opposed to
already having been approved.  *Id.*  Hometown argues that Gable lacks standing because the
notice letter advises Gable of his right to challenge the rent increase and Gable suffered no injury
because he cannot plausibly allege that he was dissuaded from challenging the rent increase.  *Id.*
at 28-29.  Hometown contends that Gable's claim about being dissuaded from filing a rent
increase challenge is even less plausible because he filed a challenge in 2021 based on a notice
letter containing identical language.  *Id.*

Gable argues that Hometown's notice letter purporting to be from, or simulating, the
Township, bearing not even a single reference to Hometown and on Township letterhead, is a
*per se* violation of the CFA.  Pl.'s Br. 35-39.  Gable contends that he has pled an ascertainable
loss as a direct result of Hometown's *per se* violation – he believed that the notice letter was
authored by the Township to both propose and approve the rent increase and, therefore, was
dissuaded from challenging it.  *Id.*  As a result, he was subjected to a full 2.5 percent rent
increase.  *Id.*

Gable has plausibly stated a CFA claim based on the notice letter that allegedly
impersonates or simulates the Township.  First, notwithstanding arguments about the notice
letter's origin and content, Gable adequately pleads that the notice letter falls within the scope of
N.J.S.A. § 56:8-2.1, thereby constituting an alleged *per se* unlawful act or practice.  The TAC
alleges that the notice letter bears the Township's letterhead -- **<u>"Gloucester Township Housing
Authority – Rent Stabilization"</u>**; Hometown is not mentioned in the notice letter referencing a
rent increase; the notice letter references "we", however, there is no indication who "we" refers

to; the only entity referenced within the notice letter is the Township; and Township officials, upon being shown the notice letter, were shocked and noted the misleading and confusing nature of the letter, especially since it is sent to senior citizens.  Thus, at this stage in the litigation, the Court need not consider the contents of the notice letter to determine that, on its face, it is plausible that this notice letter wrongfully implies an association with the Township or uses a format that simulates the Township in Hometown's attempt to increase the rent of Shenandoah Village residents.[8]

Second, Gable does adequately allege an injury and ascertainable loss.  Hometown contends that the plain language of the notice letter outlines Gable's ability to challenge the increase and thus, he has suffered no injury by being informed of those rights.  The Court notes that the notice letter only provides that a resident can send a letter stating "any maintenance problems" with the rental unit or common areas.  Compl., Ex. C.  It also provides that a tenant can petition the Township at any time for a rent reduction relating to uncorrected defects and deficiencies.  Compl., Ex. C.  It is not clear that the letter plainly states that a rent increase can be challenged.  In any event, the TAC alleges that the *per se* unlawful conduct relating to the confusing and misleading nature of the notice letter seeking a rent increase, primarily it appearing to simulate the Township, misled Gable into not challenging the rent increase, thereby

---

[8] Defendant provides that § 56:8-2.1 is aimed at prohibiting sellers of consumer products and services from inducing consumers into transactions using a false imprimatur of government power and the notice letter is inconsistent with any plausible claim that Hometown was impersonating the Township in an attempt to sell something.  The Court declines to adopt this argument.  The CFA applies to the sale or advertisement of any merchandise or real estate but also to the subsequent performance relating to same.  N.J.S.A. § 56:8-2.  A myriad of landlord/tenant transactions fall under the purview of the CFA.  Indeed, New Jersey's Appellate Court stated that "it is well-established that the broad scope of the CFA encompasses transactions between residential tenants and their landlords. In such situations, the landlords are considered to be 'sellers' and the tenants to be 'consumers.'" *Heyert v. Taddese*, 431 N.J. Super. 388, 413, 70 A.3d 680, 695 (App. Div. 2013).  Gable can plausibly state a claim relating to Hometown's process of terminating the lease to replace it with a new lease at an increased rental amount.

causing him to sustain an unchallenged 2.5 percent rent increase.  This is the plausibly alleged

injury and loss resulting from the alleged unlawful conduct.[9]

### B.      Breach of Contract/Unjust Enrichment (Counts Two and Three)

Gable alleges that Hometown breached the residential lease and the Guidelines for Living

by prohibiting the use of all outdoor activities and amenities in 2020.  Compl. ¶¶ 94-103.  Gable

avers that Hometown was contractually required to provide the services and amenities.  *Id.* ¶ 96.

Gable avers that even as COVID-19 restrictions loosened, Hometown refused to accommodate a

late-June 2020 request to use the Shenandoah Village clubhouse for an indoor meeting consistent

with the then-allowable restrictions on indoor gatherings pursuant to EO 152.  Compl. ¶ 40.

Hometown contends that the TAC does not allege which provision of the lease or

Guidelines for Living that Hometown breached, stating that courts in this district have

determined that to state a breach of contract claim, the complaint must allege the provisions of

the contract that were allegedly breached.  Def.'s Br. 21-25.  Hometown also argues that the

restrictions on services and amenities were: adopted pursuant to New Jersey's COVID-19

restrictions; necessary to protect the health and safety of the senior citizen residents; and

authorized by the Guidelines of Living.  *Id.*

The TAC pleads the required elements of a breach of contract claim.  "To establish a

breach of contract under New Jersey law, a plaintiff must plead three elements: '(1) the existence

of a valid contract between the parties; (2) failure of the defendant to perform its obligations

under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged

damages.'"  *Motamed v. Chubb Corp.*, No. 15-7262, 2016 WL 1162853, at *3 (D.N.J. Mar. 24,

---

[9] Hometown also contends that Gable challenged the rent increase in 2021 based on an identical notice, however, the circumstances influencing Gable's decision to challenge the 2021 rent increase is not an issue the Court will address at the motion to dismiss stage.

2016)(quoting *Sheet Metal Workers Intern. Ass'n Local Union No. 27, AFL–CIO v. E.P.*
*Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013)).  Here, Gable identified the residential lease
and the Guidelines for Living as the contract.  Next, he pleads that the agreement provides for his
use of various services and amenities and Hometown prohibited the use of those services and
amenities inconsistent with the existing executive orders governing restrictions for indoor
gatherings.  Finally, Gable alleges damages by virtue of his payment for amenities that
Hometown was contractually obligated to provide but did not.

      At the pleading stage, the Court declines to credit Hometown's argument that the
Guidelines for Living expressly authorized their conduct.  Gable has adequately alleged that
Hometown denied use of the facilities at a point when then-in-place EO 152 relaxed indoor
meeting restrictions.  Thus, determinations about Gable's June 2020 request, Hometown's
alleged denial, and whether Hometown's actions were necessary and sanctioned by the
Guidelines of Living, fall outside of the scope of this Motion.

      Similarly, the Court will reject Hometown's argument that Gable is required to identify a
specific contractual provision.  The court in *Montamed* noted "[t]here is some variety in New
Jersey caselaw as to whether a plaintiff must identify specific contract provisions to survive a
motion to dismiss." *Motamed*, 2016 WL 1162853, at *4 (citing cases).  However, the court noted
that many courts dismiss these claims that fail to identify discrete contractual provisions when
the claims lack specificity and fail to provide fair notice of the plaintiff's claims.  *Id.*  Gable's
allegations are clear – he contends that Hometown breached the residential lease by failing to
provide services for which the lease requires it provide.  Indeed, the very first paragraph of the
lease indicates that the agreement allows the homeowner to use the homesite and "allows
HOMEOWNER the use of common area facilities at the COMMUNITY . . . ."  Declaration of

Tara Edmonds (ECF No. 33-2), Ex. A.  Thus, the Court declines to adopt Hometown's position

on this issue when the breach of contract claim is adequately pled and there is fair notice for the

basis of said claim.

Turning to Gable's unjust enrichment claim (Count III), Gable contends that unjust

enrichment is pled in the alternative to Count Two.  Hometown argues that a quasi-contract

claim like unjust enrichment cannot exist where there is an enforceable, valid contract – the

residential lease and the Guidelines for Living – between the parties.  Rule 8 of the Federal Rules

of Civil Procedure allows for alternative and inconsistent pleading.  Fed. R. Civ. P. 8(d).  There

are instances of courts in this District declining to dismiss quasi-contractual claims pled along

with express contract claims.  *Dando v. Bimbo Food Bakeries Distribution, LLC*, No. 14-2956

(NLH/KMW), 2017 WL 1362022, at *4 (D.N.J. Apr. 10, 2017)(although recognizing case law

dismissing an unjust enrichment claim when the parties did not dispute the existence of an

express contract, the court, referencing Rule 8, allowed the unjust enrichment claim to remain

past the pleading stage).  Here, Hometown fails to argue that Gable does not state a claim and,

thus, at this stage in the litigation, the Court will allow Gable to maintain his unjust enrichment

claim.  While the residential lease references use of the community common area facilities, there

is no separate "amenity fee."  Instead, Gable has pled the value of the services which is not

specifically delineated in the residential lease.  Based on these facts, the Court finds it

appropriate to allow both the contract and quasi-contract claims to proceed.

### C.      TCCWNA (Count Four and Seven)

The TAC alleges two different claims under the TCCWNA.  Count Four of the

TAC alleges that the 2020 Notice to Quit violated the TCCWNA by giving notice that Gable

would be evicted on April 30, 2020, despite the fact that EO 106 prevented any such eviction

from taking place.  Compl. ¶¶ 118-119.  Count Seven alleges a violation of the TCCWNA by

virtue of Hometown sending a notice appearing to be from the Township in violation of N.J.S.A.

§ 56:8-2.1, discussed *supra*.  Compl. ¶¶ 192-195.  The TAC alleges that the misleading and

unlawful letterhead, deterred residents from rejecting, challenging, or otherwise avoiding the rent

increase.  Compl. ¶¶ 196-199.  After a recitation of the legal standard governing TCCWNA

claims, the Court will address each Count in turn.

The TCCWNA was enacted "to prevent deceptive practices in consumer contracts."

*Dugan v. TGI Fridays, Inc.*, 231 N.J. 24, 67, 171 A.3d 620, 646 (2017).  The New Jersey

Supreme Court explained the legislature's observations that:

> [f]ar too many consumer contracts, warranties, notices and signs contain
> provisions which clearly violate the rights of consumers. Even though these
> provisions are legally invalid or unenforceable, their very inclusion in a contract,
> warranty, notice or sign deceives a consumer into thinking that they are
> enforceable, and for this reason the consumer often fails to enforce his rights.

*Id.* at 68.  TCCWNA is not intended to recognize new consumer rights but instead imposed "'an

obligation on sellers to acknowledge clearly established consumer rights and provided remedies

for posting or inserting provisions contrary to law.'"  *Id.* (citing *Shelton v. Restaurant.com, Inc.*,

214 N.J. 419, 432, 70 A.3d 544 (2013)).  The Act provides:

> No seller ... shall in the course of his business offer to any consumer or
> prospective consumer or enter into any written consumer contract or give or
> display any written consumer warranty, notice or sign ... which includes any
> provision that violates any clearly established legal right of a consumer or
> responsibility of a seller, lessor, creditor, lender or bailee as established
> by State or Federal law at the time the offer is made or the consumer contract is
> signed or the warranty, notice or sign is given or displayed.

*Shelton*, 214 N.J. at 427(citing  *N.J.S.A.* 56:12–15).  Any person violating the Act's provisions is

"liable to an aggrieved consumer for a civil penalty not less than $100, actual damages, or both

at the election of the consumer, in addition to reasonable attorneys' fees and court costs."  *Id.* at

428 (citing *N.J.S.A.* 56:12–17).

To state a claim under the TCCWNA, a plaintiff must prove four elements: (1) defendant was a seller, lessor, creditor, lender or bailee (or assignee); (2) defendant offered or entered into a written consumer contract or provided or displayed any written consumer warranty, notice or sign; and (3) at the time that the written consumer contract is signed or the written consumer warranty, notice or sign is displayed, that writing contains a provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law; and (4) plaintiff is an aggrieved consumer. *Spade v. Select Comfort Corp.*, 232 N.J. 504, 516, 181 A.3d 969, 976 (2018)(internal quotations omitted).

Turning to Count Four of the TAC, Hometown relies on its arguments relating to the 2020 Notice to Quit CFA claim, discussed *supra*.   Secondarily, Hometown argues that the TCCWNA does not apply to real property or residential leases and the 2020 Notice to Quit is a part of and involves the lease of real property.  Def.'s Br. 20-21.  Gable argues that the TAC states a claim under the TCCWNA because he is an aggrieved consumer, Hometown is a seller, the Notice to Quit constituted a notice, and the Notice to Quit threatened eviction even though State law prohibited same.  Pl.'s Br. 28-32.  Moreover, Gable argues that the plain language of the statute excluding "residential leases" but not the "leasing of residential property," demonstrates that the TCCWNA is applicable to the Notice to Quit.  Pl.'s Br. 31-32.  Here, for the reasons set forth, *supra*, regarding the TAC's failure to adequately plead that the Notice to Quit ran afoul of EO 106, Gable's TCCWNA claim similarly fails.  As such, the TAC does not adequately allege that Hometown violated a clearly established legal right established by State law.

Regarding the Count Seven TCCWNA claim, Hometown adopts its arguments concerning the Count Six CFA claim.  Thus, for the reasons articulated, *supra*, regarding the

Count Six CFA claim, the Court finds that the TAC plausibly states a claim regarding the notice letter that allegedly impersonates or simulates the Township.  The Count Seven TCCWNA will be permitted to proceed.

## V.   CONCLUSION

For the reasons set forth above, Hometown's Motion to Dismiss is granted as to Counts One, Four, and Five.  An accompanying Order will be entered.


Dated: November 30, 2022

_____
KAREN M. WILLIAMS
United States District Judge